UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                      Chapter 11 Case
**ROBERT LITWIN,**             Case No. 14-12933 (REG)

     **Debtor.**
-----------------------------------------------------------X

## Disclosure Statement
## Dated March 3, 2015

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.**

**ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.**

**ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

                   Lewis W. Siegel
                   Attorney for Proponent AHM Advisors LLC

                   630 Third Avenue - 7th Floor
                   New York, NY 10017
                   (212) 286-0010

## INTRODUCTION

1. AHM Advisors LLC ("Proponent" or "AHM") submits this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances of its Plan of Reorganization dated March 3, 2015 (the "Plan") under Chapter 11 of the United States Bankruptcy Code. A copy of the Plan is attached hereto as Exhibit "A". All Creditors are urged to review the Plan, in addition to reviewing this Disclosure Statement. All capitalized terms used but not defined in the Plan shall have the meaning set forth in the Plan.

2. This Disclosure Statement is not intended to replace a review and analysis of the Plan. Rather, it is submitted as a review of the Plan in an effort to explain the terms and implications of the Plan. Every effort has been made to fully explain the various aspects of the Plan as it affects all Creditors. To the extent a Creditor has any questions, Proponent urges you to contact its counsel and every effort will be made to assist you. Proponent URGES YOU TO VOTE IN FAVOR OF THE PLAN. PROPONENT'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN. IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, PROPONENT INTENDS TO SEEK CRAMDOWN OF THE PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE PLAN.

3. On _____, 2015, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of Debtor, to enable Creditors whose votes are being solicited to make an informed judgment

whether to accept or reject the Plan.

4. Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement.

5. EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR PROPONENT.

6. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY DOCUMENTS FILED BY DEBTOR'S WITH THE COURT, PUBLIC RECORDS, AND THE CLAIMS FILED IN THE CASE . BASED UPON THE INFORMATION MADE AVAILABLE, PROPONENT'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE. NEITHER PROPONENT NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

7. After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for Proponent so as to

be received on or before _____, 2015.

8. The Bankruptcy Court has entered an Order fixing _____ , 2015, at \_\_\_ .m., at the United States Bankruptcy Court, One Bowling Green, New York, New York, as the date, time and place for the hearing on confirmation of the Plan, and fixing _____, 2015, as the last date for the filing of any objections to confirmation of the Plan.

## **BACKGROUND**

9. On October 21, 2014, Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code").

10. Debtor owns the following three parcels of real estate:

(1) A vacant parcel located at 127/129 West 112 Street, New York, NY (the "112th Street Property") which Debtor estimated had a value of not less than $2.1 million.

(b) A parcel with a partially constructed building located at 343 West 123 Street, New York, NY (the "123rd Street Property") which Debtor estimated has value of not less than $1.2 million.

(c) A small parcel in Long Island City, New York (Block 426 Lot 191) which Debtor estimated has value of $1,000.

11. As of October 21, 2014, AHM had a secured claim in the amount of $1,222,336.99. AHM's claim is based on a mortgage foreclosure judgment entered by the Supreme Court, New York County on December 12, 2013 and the accrued interest and expenses through October 21, 2014. AHM was a properly filed first mortgagee with respect to both the 112th Street Property and the 123rd Street Property (collectively, the "Properties"). In addition to the secured claim through the date of the filing, AHM is entitled to accruing

interest and expenses from the date of the Chapter 11 filing through the date it is paid in full.

12. The Chapter 11 was filed to prevent foreclosure sale of the Properties on October 22, 2014.

13. Debtor has indicated that his financial problems arose from the costs of fights with the NYC Department of Buildings. Proponent is not in position to speculate as to why Debtor has not paid the amounts due to its creditors.

14. Since Debtor elected to file a petition in the Bankruptcy Court, Proponent submits that the most expedient means by which to solve Debtor's problems is through confirmation of a Chapter 11 plan. Accordingly, Proponent proposes to sell Debtor's 112th Street Property under a plan of reorganization, and to create a fund for the payment of creditor claims that is estimated to be sufficient to pay all legitimate currently scheduled and filed claims in full in cash with interest. If there are insufficient funds to pay all creditors from the sale of the 112th Street Property, the Plan provides for the sale of the 123rd Street Property.

15. In December 2014, Debtor executed an agreement (the "WGotham Agreement") with 129 West 112th Street LLC pursuant to which it apparently sought to provide for the development of the 112th Street Property and would fund up $1,500,000 to acquire the 112th Street Property from Debtor to fund payments to creditors. The Debtor would retain rights under the WGotham Agreement to participate in the gains from the development of the 112th Street Property. The WGotham Agreement has never been submitted to the Court for approval.

**Bankruptcy Court Contested Matters**

16.     There has only been one contested matter in the case to date.

17.     As Debtor had filed two prior cases under the Bankruptcy Code within the prior year, the automatic stay pursuant to Bankruptcy Code §362 was not in effect on the filing of the case. Immediately afer filing the case, Debtor's attorney moved to impose the automatic stay. The Court granted Debtor's motion but specified that Debtor needed to act promptly or the stay could be lifted.

**Proponent's Plan of Reorganization**

**Classification and Treatment of Claims**

The Plan establishes 5 classes of claims:

**Class 1**

18.     **Classification** - Amounts due New York City for real estate tax, water, sewer and other liens. Proponent believes these Claims total approximately $53,000 as of December 31, 2014. Debtor's schedules indicated that taxes of $56,135 were due on the 112th Street Property and taxes of $53,757 were due on the 123rd Street Property. The NYC Depart of Finance web site shows that as of January 1, 2015 $38,227.11 was due for the 112th Street Property and $14,719.28 was due on the 123rd Street Property. Additional taxes and interest have accrued since the filing of the case and will continue to accrue on these claims during the pendency of the case.

19.     **Treatment** - Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

20. **Voting** - Unimpaired and deemed to have accepted the Plan

### Class 2

21. **Classification** - AHM's Claim totals approximately $1,222,336.99 as of October 21, 2014. This claim is based on a judgment obtained by AHM on a mortgage note from Debtor and includes interest and expenses through the date of filing. Additional interest, expenses and fees have accrued and will continue to accrue on this claim during the pendency of the case. To the extent AHM is the successful bidder on the 112th Street Property, its claim will be reduced by any amount it credit bids for the Property.

22. **Treatment** - Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate plus fees and expenses as they accrue from the Petition Date through the date of payment.

23. **Voting** - Unimpaired and deemed to have accepted the Plan

### Class 3

24. **Classification** - The secured portion of the claim of Columbus Corners Realty ("Columbus") the Debtor's residential landlord. Columbus filed a claim a claim for $6,677.66 for rent arrears and indicated that it was entitled to a priority claim of $2,775 as a consumer deposit. Proponent believes the claim is properly classified as an unsecured claim of $3,902.66 and a secured claim of $2,775 as Debtor's obligation is apparently secured by a security deposit held by the landlord.

25. **Treatment** - Payment in full in Cash of Allowed Amount on the Effective Date.

26. **Voting** - Unimpaired and deemed to have accepted the Plan.

### Class 4

27. **Classification** - Priority Claims under Sections 507(a)(2),(3),(4),(5),(6),(7) and (8) of the Bankruptcy Code. The only claim in this Class was filed by the Internal Revenue Service which asserted a priority claim of $1,076.

28. **Treatment** - Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

29. **Voting** - Unimpaired and deemed to have accepted the Plan

## Class 5

30. **Classification** - General Unsecured Claims. Claims total approximately $66,368 based on the Claims that have been filed which indicated an amount due. It is not anticipated that there will be any lease or contract rejection claims, other than those which have already been filed by OTL Enterprises, LLC ("OTL") and ALTO 112, LLC ("ALTO"). OTL and ALTO have filed claims which specify no amount but assert a right to specific performance under a purported contract dated April 17, 2013 for the sale of the 112th Street Property. Debtor has indicated that he has not signed contract for the sale of the 112th Street Property, and the claims by OTL and ALTO have no validity.

31. **Treatment** - Payment of available cash up to Allowed Amount of Class 5 Claims plus interest at the Legal Rate, after payment of Administration Claims, Class 1,2, 3, and 4 Claims. If insufficient cash from the sale of the 112th Street Property is available for Class 5 Claims after payment of senior claims as provided for in the preceding sentence, then the Class 5 Claims shall be paid pro-rata share from the sale of the 123rd Street Property to the extent of the unpaid portion of the Claim.

32. **Voting** - It is anticipated that the Claims in this Class will be paid in full on

the Effective Date and therefore unimpaired and deemed to have accepted the Plan. However, if there are not sufficient funds from the sale of the Properties to pay all claims in full, this Class would be Impaired and entitled to vote on the Plan. Therefore, it is requested that creditors in this class cast their ballots in case they are impaired.

**Equity Interests**

33. As Debtor is an individual, there are no Equity Interests. Debtor will retain all property not sold under the Plan. Debtor does not vote under the Plan.

**Administrative Expenses**

34. Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment.

35. Administrative Expenses are not known at this point, but will include:

(a) The fees and expenses of Debtor's Chapter 11 attorney, estimated to be $50-100,000

(b) Unpaid obligations incurred by Debtor in the ordinary course of his business and/or affairs.

(c) The fees and expenses, including legal fees and expenses, of Proponent in connection with the preparation, submission and carrying out Plan and Disclosure Statement including the sales of any of the Properties. If there is no litigation concerning the Plan and Disclosure Statement, proponent estimates the fees and expenses to be $15-50,000.

36. All outstanding United States Trustee fees shall be paid as they come due, and if not paid prior thereto, shall be paid in full, in cash on the Effective Date.

**Means for Implementation**

37. **Source of Funds** - Effective Date payments under the Plan will be paid from the sale of the 112th Street Property pursuant to the Sale and Auction Procedures annexed to the Plan as Exhibit A. The transfer of the Property under the Plan shall be free and clear of all liens, claims, encumbrances, and interests of every type and nature, including commercial leases, occupancy rights, and any claims or interest arising from rejected leases or contracts and including any claim by any party asserting a right to specific performance of the sale of the property. Any such liens, claims, encumbrances, and interests of every type and nature, shall attach to the net sale proceeds of the 112th Street Property and/or to the 123rd Street Property. AHM is willing to make an opening bid of $3,600,000 for the 112th Street Property. It is unknown whether any other parties will bid. If the proceeds from the sale of the 112th Street Property are not sufficient to pay the Claims in full, the Debtor will sell the 123rd Street Property on such terms as may be set by the Bankruptcy Court, and the net proceeds will be used to pay any unpaid Claims.

38. **Sale Approval** - As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that the order approving the sale of the 112th Street Property (the "Sale Approval Order") or Confirmation Order (if that order approves the sale of the 112th Street Property) contain the following findings of fact and conclusions of law with respect to the sale of the 112th Street Property: (a) that the terms and conditions of the sale are fair and reasonable, (b) that Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly

and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

39. **Release of Liens** - Except as otherwise provided for in the Plan, on the Closing Date of the sale of the 112th Street Property, each holder of a Secured Claim, shall (a) turn over and release to Proponent any and all Collateral that secures or purportedly secures such Claim, as they pertain to the 112th Street Property, or such Lien shall automatically, and without further action by Debtor or Proponent, be deemed released, and (b) execute such documents and instruments as Proponent requests to evidence such Claim holder's release of such property or Lien.

40. **Stamp Tax** - Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the

purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Sale Approval Order or Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

41.  **Execution of Documents** - Proponent shall be authorized to execute, in the name of any necessary party, any deed, transfer tax return, notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

42.  **Recording Documents** - Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## Liquidation Analysis

43. In a liquidation under Chapter 7 of the Bankruptcy Code, Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority. Proponent believes that the Plan provides a better and faster return for Debtor's estate than could be achieved in a liquidation. Under the Plan the creditors should be able to be paid in less than thirty days after Effective Date. In a liquidation pursuant to Chapter 7, there would be an additional layer of administration legal expenses and commissions, and the time for payments to creditors would take much longer.

## Litigation Analysis

44. Proponent believes that Plan confirmation may be contested. Proponent is not aware of any pending or potential litigation that will effect Plan confirmation.

## Payment of Claims and Objections to Claims

45. Proponent's attorney shall act as escrow agent for all funds to be received and shall be disbursing agent under the Plan without a bond. Proponent and Debtor shall have a right to file objections to claims, if grounds exist to object to particular claims, for a period of 120 days after the Effective Date. On the initial distribution date and on each distribution date as may thereafter be necessary, Proponent shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full. To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve

and paid to the holder of such Allowed Claim. After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

### Executory Contracts and Unexpired Leases

46. All non-residential unexpired leases and executory contracts not assumed prior to the Effective Date shall be rejected under the Plan, including commercial leases. If a rejection results in damages, a Proof of Claim for such damages must be filed by the damaged party with the Court within thirty (30) days after the earlier of the date of the rejection or the Effective Date.

47. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims. Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided in the preceding paragraph above shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

### Management of Debtor

48. Debtor appears to manage himself. Post- confirmation management will remain unchanged, provided however, that the Plan shall be implemented by Proponent.

### Tax Consequences

49. Proponent does not believe that there will be any negative tax consequences to Debtor or to Creditors under the Plan. To the extent that a creditor is not paid in full under the

Plan, such creditor may be entitled to a bad debt deduction. To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

50.     **PROPONENT DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN. CREDITORS AND INTEREST HOLDERS SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.**

<u>**Alternatives**</u>

51.     Debtor indicated that he intended to file a plan based on Debtor's entry into the WGotham Agreement and the funding to be provided under that agreement. Though the WGotham Agreement was entered into in December 2014, it has never been submitted to the Bankruptcy Court to be approved and no plan has been filed by Debtor.

<u>**Voting Procedures and Requirements**</u>

52.     A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement. Each creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes. The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than _____, 2015, at the following address: Lewis W. Siegel, 630 Third Avenue - 7th Floor, New York, New York 10017.

53.     Each Creditor of Debtor whose Claim is impaired under the Plan is entitled to

vote, if either (i) its Claim has been scheduled by Debtor, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings.

54. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

55. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

56. The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

57. The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

### **Confirmation of the Plan**

58. Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

59. By order of the Bankruptcy Court dated _____, 2015, the

Confirmation Hearing has been scheduled for _____, 2015, at __ .m., in the Honorable Robert E. Gerber's Courtroom, United States Bankruptcy Court, One Bowling Green, New York, New York. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before _____, 2015: Lewis W. Siegel, 630 Third Avenue - 7th Floor, New York, New York 10017. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

60. At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan. The applicable requirements are as follows: (a) The Plan complies with the applicable provisions of the Bankruptcy Code, (b) Proponent has complied with the applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) Proponent has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of Debtor, an affiliate of Debtor participating in a Plan with Debtor, or a successor to Debtor

under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and Proponent has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of Debtor or any successors to Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

61. Proponent believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that Proponent has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

62. Proponent contends that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts

not less than the amounts likely to be received if Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

### Cramdown

63. If any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of Proponent if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

64. Proponent intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

65. A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests. "Fair and equitable" has different meanings for Secured and Unsecured Claims.

66. With respect to a Secured Claim, "fair and equitable" means either: (a) the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

67. With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

68. If one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

**Conclusion**

69. Proponent urges Debtor's Creditors to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received no later than _____ , 2015.

Dated:      New York, New York
                March 3, 2015

AHM Advisors LLC
Plan Proponent

       /s/ Avi Dishi
By: _____
      Authorized Signatory

Lewis W. Siegel
Attorney for Proponent AHM Advisors LLC

/s/ Lewis W. Siegel
_____
Lewis W. Siegel

630 Third Avenue - 7th Floor
New York, NY 10017
(212) 286-0010)593-110