**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
**In re:**

**ROBERT LITWIN,**

                **Debtor.**

**Chapter 11 Case**
**Case No. 14-12933 (REG)**

------------------------------------------------------------X

## MOTION FOR ORDER APPROVING
## DISCLOSURE STATEMENT AND SALE PROCEDURES

AHM Advisors LLC (the "Proponent" or "AHM") as and for its motion ("Motion") pursuant to sections 105(a), 363, 365 and 1125 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (a) approving the Proponent's Disclosure Statement dated March 3, 2015 for the case of Robert Litwin, (the "Debtor") and (b) approving Bidding and Auction Procedures (the "Sale Procedures") in connection with the sale of the real property owned by Debtor at 127/129 West 112 Street, New York, NY (the "112th Street Property") pursuant to the Proponent's Plan of Reorganization, respectfully represents as follows:

### BACKGROUND

1. On October 21, 2014, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code").

2. The Debtor owns the 112th Street Property located at 127/129 West 112 Street, New York, New York. The value of the 112th Street Property according to the Debtor is at least $2,100,000. Debtor also owns another property (the "123 Street Property") located at 343 West 123 Street. Debtor has said the 123rd Street Property is worth at least $1,200,000.

3. Debtor filed its case in order to avoid the foreclosure sale scheduled by AHM

for October 22, 2014 of the 112th Street Property and the 123rd Street Property.

4. As of the date this case was filed, Proponent's secured claim on the Property was for $1,222,336.99. That claim will continue to accrue interest and other fees and expenses until it is paid in full.

5. The 112th Street Property and the 123rd Street Property (collectively, the "Properties") are also encumbered by real estate taxes and other charges due to New York City. AHM believes such taxes and other charges total approximately $53,000 as of the date the case was filed and additional taxes and charges continue to accrue.

6. The Debtor's other secured and priority claims, appear to total approximately $4,000.

7. The Debtor's general unsecured claims, appear to total approximately $66,000, exclusive of claims made by OTL Enterprises, LLC ("OTL") and ALTO 112, LLC ("ALTO") which claim they had a contract to buy the 112th Street Property. The OTL and ALTO claims do not have a dollar amount listed but assert a right to specific performance.

8. OTL and ALTO filed a lis pendens with the New York County Clerk. That lis pendens was filed after AHM had commenced its foreclosure action and therefore is subordinate to AHM's foreclosure action.

9. Since the Debtor elected to file a petition in the Bankruptcy Court, the Proponent submits that the most expedient means by which to solve the Debtor's problems is through a speedy sale of the 112th Street Property and confirmation of a Chapter 11 plan. On March 3, 2015, Proponent filed the Plan and the Disclosure Statement in connection with the Plan. Under the Plan, Proponent proposes to sell the 112th Street Property and to create a fund for the payment of creditor claims that is estimated to be sufficient to pay all creditors in full

in cash with interest and leave a surplus to be paid to Debtor.

10. By this Motion, the Proponent seeks approval of Disclosure Statement and of the Bidding and Auction Procedures annexed as Exhibit A to the Plan so that a sale of the 112th Street Property can be approved and consummated quickly.

**AUCTION PROCEDURES**

11. The Bidding and Auction Procedures proposed by AHM are as follows:

**Time and Place of Sale**: The Sale will be held on May 20, 2015 at 11:00 a. m. at the offices of Lewis W. Siegel, 630 Third Avenue - 7th Floor, New York, New York 10017.

**Sale Pursuant to Chapter 11 Plan**: The Seller of the Property is the Debtor. The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Proponent's Chapter 11 Plan of Reorganization (the "Plan"), including any amendments to the Plan.

**Sale Free and Clear of Liens**: The Sale of the Property shall be free and clear of all liens, claims, encumbrances, and interests of every type and nature, including commercial leases, occupancy rights, and any claims or interest arising from rejected leases or contracts and including any claim by any party asserting a right to specific performance of the sale of the Property. Any such liens, claims, encumbrances or interests shall attach to the sale proceeds, and be disbursed under the Plan.

**Qualification to Bid**: In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder, except the Proponent or its designee, must deliver to the Proponent (a) a bank check in the amount of THREE HUNDRED SIXTY THOUSAND DOLLARS ($360,000.00) (the "Qualifying Deposit") payable to "Lewis W. Siegel, as Attorney" (b) evidence reasonably demonstrating such

bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase, substantially in the form of the Contract/Offer form annexed to the Plan. No later than one business day before the Sale, each bidder will be notified by Proponent as to whether Proponent deems such bidder qualified to bid at the Sale.

**Bidding**: Bidding shall be conducted openly at the Sale. The opening bid shall be $3,600,000.00. Minimum bidding increments shall be $25,000. Proponent may credit bid its full claim.

**Successful Bidder Additional Deposit**: At the Sale, once a bidder (the "Successful Bidder") is determined to have made the highest or best bid for the Property at the sale, bidding shall be deemed closed and no additional bids will be considered. Within one business day after the Successful Bidder is determined, the Successful Bidder (except for Proponent or Proponent's nominee) shall be required to reexecute and submit to Proponent the offer/contract with winning bid price and increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the purchase price. At the conclusion of the Sale, Proponent's counsel will return the Qualifying Deposits to all bidders other than the Successful Bidder and the second highest bidder.

**Hearing if Disputed Sale**: If an issue exists as to which competing bid is higher or better, a hearing will be conducted by the Bankruptcy Court on that issue at the Plan Confirmation Hearing on May 28, 2015 at 9:45 a.m., or at such other date and time as the Bankruptcy Court may fix, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

**Sale Approval Order**: The Confirmation Order confirming Proponent's Plan or a

separate order approving the Sale, shall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the sale and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

**Closing**: At the closing of title to the Property (the "Closing"), the Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to Proponent's attorney, by bank check payable to the order of "Lewis W. Siegel, as Attorney", or wire transfer to the IOLA Escrow Account of Lewis W. Siegel. The Successful Bidder must close title to the Property at a date that is no more than ten (10) business days after the Order by the Bankruptcy Court approving the Sale becomes final and nonappealable, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by Proponent.

**Transfer Tax**: Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of

any other lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

**Damages for Failure to Close**: Time is of the Essence as Against the Successful Bidder for the Successful Bidder to both timely pay the additional Qualifying Deposit and timely close. If the Successful Bidder fails to pay the Qualifying Deposit or fails to close for any reason whatsoever (except as otherwise provided below) including a failure to pay the balance of the Purchase Price on the Closing Date, the deposit shall be retained as liquidated damages and the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale shall be terminated. The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale

other than Debtor's inability to deliver a quit claim deed to the Property. Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall Debtor, Proponent or Proponent's professionals be responsible for, or pay, such expenses.

**Backup Bidder**: If the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these terms and conditions of sale, Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as Proponent deems appropriate. All bidders will be bound by these Terms and Conditions of Sale, including, except that the Second Highest Bidder must close within thirty (30) days of notification that its bid is accepted. TIME IS OF THE ESSENCE for the Second Highest Bidder to close on the Property after being advised that its bid has been accepted for any reason. If the Second Highest Bidder fails to close for any reason whatsoever (except as otherwise provided below) including its failure to pay the full balance of the Purchase Price on the date set for the Closing, the deposit shall be retained as liquidated damages and the Second Highest Bidder's right to acquire the Property under these Terms and Conditions of Sale shall be terminated. There is no contingency of any kind or nature that will permit the Second Highest Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than Debtor's inability to deliver a quit claim deed to the Property.

**No Representations**: Proponent, Proponent's professional, Debtor, and Debtor's

professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property. Each bidder shall be deemed to have agreed and acknowledged that no such

representations have been made, Proponent is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by Proponent or Debtor or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent Proponent or Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by Proponent. For the avoidance of doubt, neither Debtor nor Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

**As Is Sale**: The Property is being sold free and clear of all liens, claims, encumbrances, and interests of every type and nature, including commercial leases, occupancy rights, and any claims or interest arising from rejected leases or contracts and including any claim by any party asserting a right to specific performance of the sale of the property. Any such liens, claims, encumbrances or interests shall attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will

9

rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither Proponent nor any of its representatives make any representations or warranties with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by Debtor, Proponent or their professionals.

**Deed**: Debtor, or Proponent acting on Debtor's behalf, shall convey the Property by delivery of a quit claim deed.

**Broker**: Neither Debtor nor Proponent nor their professionals are liable or responsible for the payment of fees of any broker.

**Conduct of Sale**: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

**Failure to Close**: If Debtor, or Proponent on Debtor's behalf, is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or if the Bankruptcy Court refuses to confirm Proponent's Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against Proponent, Debtor or their professionals.

**Right to Withdraw Sale**: Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as Proponent

deems necessary or appropriate.

**Plan Confirmation**: The Sale of the Property is subject to confirmation of Proponents' Plan and or other approval by the Bankruptcy Court.

**Breakup Fee**: None

**Proponent's Designee**: Notwithstanding anything to the contrary herein, Proponent shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Qualifying Deposit or complying with the other requirements otherwise necessary to bid.

**Bankruptcy Court Jurisdiction:** The Bankruptcy Court shall determine any disputes concerning the Sale of the Property. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under Debtors' pending case.

## BASIS FOR RELIEF REQUESTED

12. The Proposed Sale is being conducted pursuant to the Plan

13. Bankruptcy Code section 1123(b)(4) specifically provides for the sale of a debtor's property under a Chapter 11 Plan.

14. Under Bankruptcy Code section 363(f), a debtor-in-possession may sell property free and clear of any interest in such property of an entity other than the estate only if, among other things: (a) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

15. Since Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five (5) requirements will suffice to permit the sale of the Property "free and clear" of Liens and Interests. *See In re Dundee Equity Corp.,* 1992 WL 53743, at *12 (Bankr. S.D.N.Y. Mar. 6,1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *Accord In re Bygaph, Inc.,* 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986); *In re Wolverine Radio Co.,* 930 F.2d 1132, 1147 fh.24 (6th Cir. 1991).

16. In this case, the lien and interest holders will be adequately protected, because their liens and/or interests will attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto.

17. Accordingly, the sale should be approved under Bankruptcy Code sections 1123(b)(5) and 363(f) pursuant to Proponent's Chapter 11 Plan.

## **NOTICE**

18. Notice of the Motion has been given to lien holders, all creditors that were scheduled or which have filed a proof of claim, and any parties that filed a notice of appearance. Proponent respectfully submits that such notice is sufficient, and request that this Court find that no further notice of the relief requested herein is required.

## **NO PRIOR REQUEST**

19. No prior request for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Proponent respectfully requests that the Bankruptcy Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and

such other and further relief as may be just and proper.

Dated:      New York, New York
                March 3, 2015

                                        Lewis W. Siegel
                                        Attorney for Proponent AHM Advisors LLC

                                        /s/ Lewis W. Siegel
                                        _____
                                        Lewis W. Siegel

                                        630 Third Avenue - 7th Floor
                                        New York, NY 10017
                                        (212) 286-0010

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**In re:**

**ROBERT LITWIN,**

                **Debtor.**

**Chapter 11 Case
Case No. 14-12933 (REG)**

-----------------------------------------------------------------X

### ORDER APPROVING DISCLOSURE STATEMENT AND FIXING TIME FOR ACCEPTANCES OR REJECTIONS OF PLAN, AND AUCTION SALE OF PROPERTY COMBINED WITH NOTICE THEREOF

A Disclosure Statement Dated March 3, 2015 (the "Disclosure Statement") under chapter 11 of the Bankruptcy Code having been filed by AHM Advisors LLC ("Proponent") in the case of the captioned debtor (the "Debtor"), referring to a Plan of Reorganization Dated March 3, 2015 (the "Plan") filed by the Proponent; and Proponent having filed a motion (the "Motion") for, among other things, the approval of the Disclosure Statement; and it having been determined after hearing on notice that the Disclosure Statement contains adequate information;

IT IS ORDERED, and notice is hereby given that:

    A.    The Disclosure Statement is approved.

    B.    May 21, 2015 at 5:00 p.m. is fixed as the last day for submitting written acceptances or rejections to the Plan referred to above, and ballots indicating acceptance or rejection of the Plan must be received by Lewis W. Siegel, at his offices located 630 Third Avenue - 7th Floor, New York, New York 10017, on or before May 21, 2015 at 5:00 p.m., in order to be counted with regard to acceptance or rejection of the Plan.

    C.    Within three business days after entry of this order, the Plan, the Disclosure Statement, and a ballot conforming to Official Form 14, shall be mailed to creditors, equity security holders and other parties in interest, and shall be transmitted to the United States Trustee as provided in Fed. R. Bankr. P. 3017(d).

D. May 20, 2015, at 11:00 a.m. (the "Sale Date"), is fixed as the date to conduct the Auction Sale of the 112th Street Property (as defined in the Motion).

E. May 28, 2015 at 9:45 a.m. is fixed as the date for the hearing on confirmation of the Plan (the "Confirmation Hearing"), before the Honorable Robert E. Gerber, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

F. The Sale Procedures annexed to the Plan as Exhibit A be, and they hereby are, approved.

G. The Proponent be, and it hereby is, authorized to sell the Property by conducting an auction in accordance with the Sale Procedures (as defined in the Motion).

H. May 21, 2015 is fixed as the last day for filing and serving written objections to the sale and to confirmation of the Plan pursuant to Fed. R. Bankr. p. 3020(b)(1), which objections must be filed, served and received by the Debtor's attorneys and the Clerk of Court, with a courtesy copy to Judge Gerber's chambers, at the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

I. The Proponent shall publish the Notice of Sale substantivally in the form annexed to the Sale Procedures in a newspaper of general circulation at least twice, at least two weeks before the Sale Date.

J. This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York
       March      , 2015

_____
UNITED STATES BANKRUPTCY JUDGE