**ROBINSON BROG LEINWAND GREENE**         Hearing Date:
**GENOVESE & GLUCK P.C.**        **April 14, 2014 at 9:45 a.m.**
875 Third Avenue
New York, New York 10022
Telephone No.: 212-603-6300
**A Mitchell Greene**
*Attorneys for 129 West 112th Street LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
In re:

                                  Chapter 11 Case

**ROBERT LITWIN**             Case No.:  14-12933 (REG)


                         Debtors.
--------------------------------------------------------X

**OBJECTION OF 129 WEST 112TH STREET LLC TO MOTION FOR ORDER APPROVING DISCLOSURE STATEMENT AND SALE PROCEDURES**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

        129 West 112TH Street LLC (the "Objecting Creditor" or "129 West"), creditor and party

in interest, by its undersigned counsel, hereby objects to the motion filed by AHM Advisors LLC

(the "Proponent" or "AHM") seeking approval of its Disclosure Statement for the Plan of

Reorganization of Robert Litwin and the bidding and sale procedures incorporated therein in

connection with the proposed auction sale of the Debtor's real property and improvements

located at 127/129 West 112th Street (the "112th Street Property") pursuant to a proposed plan of

reorganization filed by the Proponent. In support, the Objecting Creditor respectfully sets forth

and alleged as follows:

        1.        On October 21, 2014 (the "Filing Date"), Robert Litwin filed a voluntary

chapter 11 petition with this Court.

2.     The Debtor owns the 112 Street Property and the property located at 343 West

123 rd Street (the "123rd Street Property").

3.     On March 3, 2015, AHM Advisors LLC ("AHM") has filed a Chapter 11 Plan

and Disclosure Statement. In its Disclosure Statement AHM assert a $1,222,337 first mortgage

against the Properties as of the Filing Date.[1] AHM's Disclosure Statement also discloses $53,000

of real estate tax claims against the Properties, $4,000 of other priority claims, and $66,000 of

other general unsecured claims.

4.     Under its Plan, AHM proposes to sell the West 112th Street Property and on

March 3, 2015, it filed a motion seeking approval of its Disclosure Statement and the Sale

Procedures incorporated there under. AHM has indicated it will make a "stalking Horse" bid of

$3,600,000 for the West 112th Street Property inclusive of a credit bid of its entire mortgage

valued in at least the amount of its filed claim. The Sale Procedures are set forth in the Motion

filed by AHM and are set forth in more detail in the "Bidding and Auction Procedures, attached

as Exhibit "A" to AHM's proposed plan as well as in the form of contract which is a component

of the bidding procedures through which parties wishing to make competitive qualifying bids are

---

[1] It is unclear if AHM's secured claims are properly classified and its entire claim available for a credit bid as set forth in the Plan and proposed Bid Procedures. On February 5, 2015, AHM filed a proof of claim in the amount of $1,222,337 based on a purported foreclosure judgment which the claim states were to be attached to the claim. No such judgment is attached. Moreover, AHM classified its secured claim in one class even through it appears to have separate liens against two separate properties. The Plan and Disclosure Statement are unclear on how much of the AHM debt is against the West 112th Street Property and potentially available to credit bid in the sale and simply takes the position that the entire amount is available to credit bid without further explanation. The amount of AHM's claim against each property should be clarified in the Disclosure Statement. The secured claims of AHM may be improperly classified in the Plan and should be separately classified as against each property. Moreover, the Disclosure Statement should disclose the basis for asserting that the entire AHM claim is available to credit bid on the sale of the 112th Street Property.

{00723428.DOC;1 }

2

required to submit to make their offers.[2]

5.        As is set forth in more detail below, 129 West 112th Street LLC is a creditor of

the Debtor holding a substantial claim which it believes is entitled to administrative priority in an

amount of at least $416,000 plus unliquidated amounts for the Debtor's bad faith breach of his

joint venture agreement with 129 West 112th Street LLC.

6.        As this Court is aware, this is a serial filing by the Debtor[3] and as a result of

those circumstances, the automatic stay was not triggered by the Debtor's Chapter 11 petition.

On the October 21, 2014 Filing Date, the Debtor moved to extend the automatic stay. Attached

to that motion was a letter of intent between 129 West 112th Street LLC and the Debtor with

respect to a proposed joint venture development of the 112th Street Property which the Debtor

presented to the Court as evidence of this to reorganize. Based upon, inter alia, the letter of

intent, the Court extended the automatic stay and cautioned the Debtor that he would need to

proceed promptly to reorganize.

7.        On December 19, 2014, Litwin and 129 West 112th Street executed a Limited

Liability Company Agreement for Wgotham LLC (the "Joint Venture Agreement") which was to

form the basis for the joint venture developing the 112th Street Property. The Debtor had agreed

to incorporate the Joint Venture Agreement into a proposed plan or reorganization and promptly

seek approval of same by the Court. Based upon this agreement, a proposed plan and disclosure

statement incorporating the joint venture agreement were drafted by counsel to the Debtor and

---

[2] It is unclear if the Stalking Horse bidder has executed this contract. An executed contract was not attached to the Plan or Disclosure Statement.

[3] Previously, Litwin filed a chapter 13 case with this Court under case number 14-10248 on February 4, 2014 which was dismissed on the United States Trustee's motion for failure to file required documents on April 17, 2014. Subsequently, Litwin filed a second chapter 13 petition on July 8, 2014 under case number 14-12012 which was dismissed on September 8, 2014 on the Trustee's motion to dismiss. Thereafter, this third case was filed on October 21, 2014.

{00723428.DOC;1 }

shared with 129 West 112th Street LLC. However, despite the fact that the Debtor held out its
agreement with 129 West 112th Street LLC as the basis for extending the automatic stay and
thereafter 129 West 112th Street LLC negotiated in good faith with the Debtor for a joint venture
that would support a successful restructuring of the Debtor's financial affairs, the Debtor, in bad
faith, refused to authorize the filing of the plan incorporating the Joint Venture Agreement or to
otherwise seek approval of the joint venture agreement by the Court.

      8.      Eventually the Debtor's inaction resulted in the expiration of exclusivity and
AHM proposed the present plan.

      9.      While 129 West 112th Street LLC reserves all of its rights to seek imposition of
liability against Litwin for his post-petition bad faith breach of the joint venture agreement, 129
West 112th Street believe that the sale of the property pursuant to a plan of liquidation much like
the one proposed by the Proponent is appropriate. Indeed, 129 West 112th Street LLC intends to
bid at the auction sale. Accordingly, it is particularly concerned about the terms and conditions
of the proposed sale and that they present a level playing field which is calculated to lead to a
fair sale. As a result, 129 West 112th Street LLC has carefully reviewed the proposed bidding
procedures and proposed contract of sale and believes that same contain inconsistencies, vague
or incomplete provisions which should be remedied before the Disclosure Statement is approved
so that it provides adequate information regarding the terms of the sale. Similarly, the terms and
conditions of the sale as expressed through the proposed contract and Bid and Auction
procedures are lacking is many important respects, ranging from the apparent lack of any
requirement that the seller deliver marketable title and omitting many standard provisions
generally set forth in contracts for the sale of commercial property in New York City. The

{00723428.DOC;1 }

Objecting Creditor respectfully submits that the additions or amendments to the proposed bid

documents set forth in the objection are necessary to properly convey the West 112th Street

Property.

10.      Attached hereto are revised Bidding and Auction Procedures which the

Objecting Creditor respectfully requests be inserted as a new Exhibit A to the Plan. The revised

bidding procedures also include a revised contract of sale and rider which corrects certain

inconsistencies between the current contact and the current auction and bidding procedures, all of

which are delineated below.

11.      For example, the redlined proposed revised Bidding and Auction procedures

contain the following corrections, amplification or modifications to the terms of the sale:

a. *Determination of Qualified Bidder by AHM is a Conflict of Interest.* Under the Procedures proposed by AHM, AHM has the sole discretion to determine whether the other bidders have "submitted evidence reasonably demonstrating the bidder's ability to consummate a sale on the terms proposed." It is inappropriate for AHM, a bidder for the property itself to make a discretionary call on the ability of others to bid against them. In this case, the ability of bidders to post and possibly forfeit more than $360,000 should be deemed sufficient objective evidence of the bidder's ability to close on the sale. Therefore, the procedures have been amended to make a "Qualified Bidder" dependent only upon the objective criteria of submitting the $360,000 deposit and a contract substantially in the form attached to the bid procedures.

b. *Timing of notification of Qualified Bid.* Bids intended to be Qualifying Bids must be submitted by May 13th and under the original procedures, the Proponent did not need to notify bidders whether their bid was a qualified bid until one business day before the sale. Such a short notification period left potential bidders with no time to submit additional information to cure any deficiencies the Proponents might have ascribed to a bid or seek the Court's intervention. There is no reason why potential bidders cannot be notified if their bid constitutes a Qualified Bid by 5:00pm on May 15th, especially with the changes to the

qualifications proposed in item "a" above. This earlier notification leaves a bidder two full business days to correct or supplement any inadequacy in its bid or seek court intervention. The bid package is not so complex that the Proponent cannot notify bidders earlier if they have qualified or the reasons why their bid is deficient.

c. *Amount of AHM Credit Bid.* If the Proponent is going to credit bid their claim, other parties in interest are entitled to know the amount of such claim. The current procedures allow a credit bid but do not specify the amount.

d. *Timing of Return of Escrowed Funds.* The Plan does not contain an escrow agreement under which the deposits will be held. While the procedures require the successful bidder to augment its deposit, the procedures are silent on when the Proponent must return the $360,000 deposit of bidders it has rejected and when it must return the deposit of the second highest bidder after it has actually closed with the successful bidder. The substantial deposits should be promptly returned and a time frame for the return should be set forth.

e. *Lack of Sale Approval Order Draft.* The proponent did not include a proposed sale approval order. Therefore the terms of the order should be reasonably satisfactory to the successful bidder and its counsel and should be immediately enforceable notwithstanding Bankruptcy Rule 6004(h).

f. *Clarification of Liquidated Damage Provisions.* If the Successful Bidder fails to close, their deposit shall be retained as a liquidated damages. Although not clearly specified, presumably the deposit is (i) kept by the estate and not the Proponent and (ii) retention of the deposit is the only damages which may be asserted against a defaulting purchaser.

g. *Marketable and Insurable Title to be delivered at Closing.* The contract is not conditioned on delivery of marketable and insurable title. There is no reason why the seller should not be required to deliver marketable and insurable title. Delivering title of a lesser quality will reduce the sales price and is simply not commercially reasonable.

h. *Actual Knowledge of Proponent.* While the sale is "as is – where is" and subject to all faults and without any representations, there is no reason why the Proponent should not be required to disclose conditions where it has actual knowledge of same.

i. *Outside Termination Date.* While the sale is subject to confirmation of the Plan, there is no outside date by which the Successful Bidder can declare the contract terminated in the Proponent cannot consummate the transaction. A sixty day

        outside deadline for the Proponent to close is more than reasonable.

j.  *Procedures to Withdraw Sale.* The procedures give the Proponent the right to withdraw the sale but are silent on the Proponent giving notice of the withdrawal and returning all deposits. The added language addresses these issues.

k. *Disclosure of Proponent Designee.* The Proponent's designee is permitted to participate and bid in the sale. However, the identity of the designee should be disclosed and filed with the Court prior to the commencement of the auction sale.

12.      Each of the foregoing revision to the procedures proposed for the sale are necessary and will assist the parties in better understanding and complying with the procedures required to be followed for this auction. A redlined Exhibit "A" to the Plan is annexed hereto as Exhibit "A" to this objection.

13.      Similarly, the section of the bid procedures regarding "Qualifications to Bid" require that the bid be made on a form of contract annexed to the Auction and Bid Procedures. It is unclear if AHM has executed that form of contract in connection with its bid. Presumably it should be required to execute the same contract that other prospective bidders are being required to execute so that parties are competing on a level playing field.

14.      However, 129 West 112th Street LLC has reviewed the form of proposed contract and believes there are several issues which should be remedied in the form of contract before the Court approves same as a required bid document. There are also several standard commercially standard provisions which should be in a contract of this nature, ranging from the quality of the deed to be delivered, to the fact that the form of contract has no provisions relating to the status as a "foreign person" or standard provisions regarding that party's status as a "terrorist" or other designated person.

15.      A redline of a proposed form of contract is annexed hereto as Exhibit "B". The

{00723428.DOC;1 }

revised provisions include the following:

a.  The contract includes a rider (discussed below) and is now referenced and incorporated in the agreement.

b. The reference to the "Contract" is now a defined term and hence capitalized throughout the document.

c. The sale procedures refer to the termination of any existing leases. That condition of the sale is incorporated in section 7.3 of the contract which also contains a prohibition with respect to the creation of new post-petition occupancy or license agreements.

d. Section 7.5 of the contract requires delivery of a seller certification of non-foreign status required by the Internal Revenue Code.

e. Section 10.2 requires that the "as is" conditions for the sale of the property cannot render title unmarketable or uninsurable at regular rates. If the conditions do cause those issues, the purchaser can cancel the contract and obtain a return of its deposit.

16.        Similarly, 129 West 112th Street LLC has proposed a rider which it believes contains commercially reasonable terms and ought to be made a part of the proposed bid documents. These terms are commercially reasonable and likely to be requested by any sophisticated commercial purchaser and should be addressed by the Proponent at this time. The rider includes the following provision:

a.  Basic representations regarding ownership that the Property is property of the estate under section 541 and can be conveyed by the Seller.

b. Seller is not a terrorist and is not acting on behalf of any Designated or Blocked person or entity.

c. Seller is not a foreign person and if he is a foreign person, authorizing the required IRS withholding from proceeds at closing.

d.  Seller has no **actual knowledge** of any hazardous materials on the property.

e. A waiver of seller's right to seek specific performance of the contract in light of the liquidated damage provisions of the contract.

f.   Purchaser's right to assign the contract

17.    As a creditor and a potential bidder, 129 West 112th Street LLC believes that the modifications proposed herein to the Auction and Bid Procedures, including the contract and accompanying rider, address any issues concerning matters of importance to bidders that were inadvertently omitted from the original proposed documentation and bring the proposed documentation more into line with typical commercial transactions. These proposed modifications will avoid potential litigation regarding whether changes to the bid documents prevent a bid from failing to become a "Qualified Bid" under the procedures AHM is requesting be approved by this Court. The proposed changes do not prejudice the Debtor or the Proponent. Rather they clarify issues likely to be important to bidders generally and according, facilitate an auction focused on the merits and value of the properties and not on the terms and conditions of the sale.

WHEREFORE, 129 West 112th Street respectfully requests that this Court approve the modifications to the Auction and Bidding Procedures set forth in this objection, including the modifications to the terms and conditions of the proposed contract and rider for purposes of making qualified bids for the Property as part of the adequate information required to approve the disclosure statement under section 1125 of the Bankruptcy Coder along with such other and further relief as is just and appropriate.

Dated:  New York, New York
        April 7, 2015

                                        **ROBINSON BROG LEINWAND GREENE**
                                        **GENOVESE & GLUCK P.C.**

                                        By: /s/A. Mitchell Greene
                                        A. Mitchell Greene
                                        875 Third Avenue

{00723428.DOC;1 }

New York, New York 10022
(212) 603-6300
Attorneys for 129 West 112th Street LLC, Creditor

# Exhibit A

**EXHIBIT A to Plan**

**BIDDING AND AUCTION PROCEDURES**

These Terms and Conditions of Sale are promulgated in connection with the auction sale (the "Sale") of the property located at 127/129 West 112th Street, New York, NY (the "Property").

**Time and Place of Sale**: The Sale will be held on May 20, 2015 at 11:00 a.m. at the offices of Lewis W. Siegel, 630 Third Avenue - 7th Floor, New York, New York 10017.

**Sale Pursuant to Chapter 11 Plan**: The Seller of the Property is Robert Litwin (the "Debtor"). The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Chapter 11 Plan of Reorganization (the "Plan") proposed by AHM Advisors LLC, the Plan proponent ("Proponent" or "AHM"), including any amendments to the Plan.

**Sale Free and Clear of Liens**: The Sale of the Property shall be free and clear of all liens, claims, encumbrances, and interests of every type and nature, including commercial leases, occupancy rights, and any claims or interest arising from rejected leases or contracts and including any claim by any party asserting a right to specific performance of the sale of the Property. Any such liens, claims, encumbrances or interests shall attach to the sale proceeds, and be disbursed under the Plan.

**Qualification to Bid**:  In order to be qualified to bid on the Property, within seven days prior to t̶h̶e̶ ̶c̶o̶m̶m̶e̶n̶c̶e̶m̶e̶n̶t̶ the commencement of the Sale, each p̶r̶o̶s̶p̶e̶c̶t̶i̶v̶e̶ prospective bidder (e̶x̶c̶e̶p̶t̶except Proponent's nominee) must deliver to Proponent (a) a bank check in the amount of THREE HUNDRED SIXTY THOUSAND DOLLARS  ($360,000.00) (the "Qualifying Deposit") payable to "Lewis W. Siegel, as Attorney" (̶b̶)̶ ̶e̶v̶i̶d̶e̶n̶c̶e̶ ̶r̶e̶a̶s̶o̶n̶a̶b̶l̶y̶ ̶d̶e̶m̶o̶n̶s̶t̶r̶a̶t̶i̶n̶g̶ ̶s̶u̶c̶h̶ ̶b̶i̶d̶d̶e̶r̶'̶s̶ ̶a̶b̶i̶l̶i̶t̶y̶ ̶t̶o̶ ̶c̶o̶n̶s̶u̶m̶m̶a̶t̶e̶ ̶a̶ ̶s̶a̶l̶e̶ ̶o̶n̶ ̶t̶h̶e̶ ̶t̶e̶r̶m̶s̶ ̶p̶r̶o̶p̶o̶s̶e̶d̶,̶ ̶a̶n̶d̶ ̶(̶c̶and (b) a written offer to purchase, substantially in the form of the Contract/Offer form annexed hereto. No later than o̶n̶e̶

business day before the Sale, 5:00 p.m. on May 15, 2015, each bidder will be notified by Proponent as to whether Proponent deems such bidder qualified to bid at the Sale.

**Bidding**: Bidding shall be conducted openly at the Sale. The opening bid shall be $3,600,000.00. Minimum bidding increments shall be $25,000. Proponent may credit bid its full claim in the amount of $_____.

**Successful Bidder Additional Deposit**: At the Sale, once a bidder (the "Successful Bidder") is determined to have made the highest or best bid for the Property at the sale, bidding shall be deemed closed and no additional bids will be considered. Within one business day after the Successful Bidder is determined, the Successful Bidder (except for Proponent or Proponent's nominee) shall be required to reexecute and submit to Proponent the offer/contract with winning bid price and increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith deposit against payment of the purchase price. At in accordance with the Contract. Within one business day of the conclusion of the Sale auction, Proponent's counsel will return the Qualifying Deposits to all bidders other than the Successful Bidder and the second highest bidder. Within one business day of the closing of the sale with the Successful Bidder, Proponents counsel shall return the deposit of the second highest bidder.

**Hearing if Disputed Sale**: If an issue exists as to which competing bid is higher or better, a hearing will be conducted by the Bankruptcy Court on that issue at the Plan Confirmation Hearing on the  day of _____ 2015 at       , at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

**Sale Approval Order**:  The Confirmation Order confirming Proponent's Plan or a separate order approving the Sale, shall contain be reasonably satisfactory to Purchaser's counsel and shall contain, at a minimum, the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the sale and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted

openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to ~~the~~the sale of ~~the~~the Property to the purchaser under Bankruptcy Code § 363(n), ~~and~~ (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged, and (h) notwithstanding Fed Rule of Bankruptcy Procedure 6004(h), the sale order shall be immediately enforceable upon its entry.

**Closing**: At the closing of title to the Property (the "Closing"), the Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to Proponent's attorney, by bank check payable to the order of "Lewis W. Siegel, as Attorney", or wire ~~transfer~~transfer to the IOLA Escrow Account of Lewis W. Siegel to be held and disbursed in accordance with the proposed plan of reorganization or further order of the Court. The Successful Bidder must close title to the Property at a date that is no more than ten (10) business days after the Order by the Bankruptcy Court approving the Sale becomes final and nonappealable, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by Proponent.

**Transfer Tax**:  Under the Plan, pursuant to section 1146(~~c~~a) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds,

bills of sale or assignments executed in connection with the purchase of the Property by the

purchaser and any other transaction contemplated under the Plan or the re- vesting, transfer or

sale of any real or personal property of Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment including without limitation New York City Real Property Transfer

Tax and New York State Documentary Tax.

**Damages for Failure to Close**: Time is of the Essence as Against the Successful Bidder for the

Successful Bidder to both timely pay the additional Qualifying Deposit and timely close. If the

Successful Bidder fails to pay the Qualifying Deposit or fails to close for any reason whatsoever

(except as otherwise provided below) including a failure to pay the balance of the Purchase Price

on the Closing Date, the deposit shall be retained as liquidated damages which shall be the

Purchasers sole remedy against a defaulting Successful Bidder, and the Successful Bidder's right

to acquire the Property under these Terms and Conditions of Sale shall be terminated. The

Successful Bidder shall be obligated to close title to the Property and there is no contingency of

any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under

these Terms and Conditions of Sale other than Debtor's inability to deliver a quit claim

deed insurable title to the Property. Expenses incurred by the Successful Bidder, or any

competing bidder relating to any due diligence, such as obtaining title reports or environmental

inspections, shall be the sole responsibility of such bidder, and under no circumstances shall

Debtor, Proponent or Proponent's professionals be responsible for, or pay, such expenses.

**Backup Bidder**: If the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these terms and conditions of sale, Proponent, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder for the amount of such bidder's second highest bid without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as Proponent deems appropriate. All bidders will be bound by these Terms and Conditions of Sale, including, except that the Second Highest Bidder must close within thirty (30) days of notification that itsthe Successful Bidder has failed to close and that its second highest bid is accepted. TIME IS OF THE ESSENCE for the Second Highest Bidder to close on the Property after being advised that its bid has been accepted for any reason. If the Second Highest Bidder fails to close for any reason whatsoever (except as otherwise provided below) including its failure to pay the full balance of the Purchase Price on the date set for the Closing, the deposit shall be retained as liquidated damages, which shall be the Seller's sole remedy against the Second Highest Bidder and the Second Highest Bidder's right to acquire the Property under these Terms and Conditions of Sale shall be terminated. There is no contingency of any kind or nature that will permit the Second Highest Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than Debtor's inability to deliver a quit claim deed to the Propertymarketable and insurable title in fee simple to the Premises, free and clear of all liens, claims, encumbrances, and interests of every type and nature.

**No Representations**: Proponent, Proponent's professional, Debtor, and DebtorProponent, Proponent's professional, Debtor, and Debtor's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the

current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential

qualification of the Property for any and all benefits conferred by or available under federal, state

or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages,

or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or

non- compliance of the Property, in its current or any future state, with applicable present or

future zoning ordinances or other land use law or regulation, or the ability to obtain a change in

the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing

for the ~~purchase, alteration, rehabilitation~~purchase, alteration, rehabilitation or operation of the

~~Property~~Property from any source, ~~including~~including, but not limited to, any state, city or

federal government or institutional lender; (v) the current or future use of the Property; (vi) the

present and future condition and operating state of any and all machinery or equipment on the

Property and the present or future structural and physical condition of any building thereon or its

suitability for rehabilitation or renovation;(vii) the ownership or state of title of any personal

property on the Property; (viii) the presence or ~~absence~~absence of any laws, ordinances, rule or

~~regulations issued~~regulations issued by any gove~~rnmental~~rnmental authority, agency or board and

any violations thereof; (ix) any present or future issues concerning subdivision or non-

subdivision of the Property; or (x) the compliance or non-compliance with environmental laws

and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous

materials anywhere on the Property. ~~Each~~Seller shall be required to disclose such conditions

regarding the property with respect to which it has actual knowledge. Except as set forth in the

prior sentence, each bidder shall be deemed to have agreed and acknowledged that no such

representations have been made, Proponent is not liable or bound in any manner by expressed or

implied warranties, guaranties, promises, statements, representations or information pertaining to

the Property, made or furnished by Proponent or Debtor or any real estate broker agent,

employee, servant or other person or professional representing or purporting to represent

Proponent or Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by Proponent. For the avoidance of doubt, neither Debtor nor Debtor's professionals are authorized to provide any such warranties, guaranties, promises, statements, representations or information.

**As Is Sale**: ~~The~~Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Property is being sold free and clear of all liens, claims, encumbrances, and interests of every type and nature, including commercial leases, occupancy rights, and any claims or interest arising from rejected leases or contracts and including any claim by any party asserting a right to specific performance of the sale of the property. Any such liens, claims, encumbrances or interests shall attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and ~~violat ions~~violations thereof; and (e) ~~environmental~~environmental conditions. By delivering their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither Proponent nor any of its representatives make any representations or warrantees with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by Debtor, Proponent or their professionals.

**Deed**: Debtor, or Proponent acting on Debtor's behalf, shall convey the Property by~~delivery of a quit claim deed.~~ delivering at closing marketable and insurable title in fee simple to the Premises, free and clear of all liens, claims, encumbrances, and interests of every type and nature.

      **Broker**: Neither Debtor nor Proponent nor their professionals are liable or responsible for the payment of fees of any broker.

      **Conduct of Sale**: These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

      **Failure to Close**: If Debtor, or Proponent on Debtor's behalf, is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or if the Bankruptcy Court refuses to confirm Proponent's Chapter 11 plan or approve the sale of the ~~Property~~Property pursuant to ~~Section~~Section 363 of ~~the~~the Bankruptcy Code, ~~Proponent~~Proponent's only obligation will be to refund the Deposit, together with interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against Proponent, Debtor or their professionals. If the Proponent is unable to consummate the sale within sixty (60) days from the conclusion of the auction sale, unless such period is extended in writing by the Successful Bidder, the Proponent shall be deemed unable to close the sale of the Property and the Successful Bidder shall be entitled to an immediate refund of its deposit.

      **Right to Withdraw Sale**: Proponent reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as Proponent deems necessary or appropriate by filing a Notice withdrawing the Property from the Sale with the Court and serving same upon all Qualified Bidders and their counsel. In the event the

Property is withdrawn from the Sale, the Proponent shall refund all deposits submitted by Qualified Bidders within one business day from the filing of the notice by the Proponent.

**Plan Confirmation**: The Sale of the Property is subject to confirmation of Proponents' Plan and or other approval by the Bankruptcy Court.

**Breakup Fee**: None

**Proponent's Designee**: Notwithstanding anything to the contrary herein, Proponent shall be entitled to name a designee or designees who shall be deemed qualified to bid without posting a Qualifying Deposit or complying with the other requirements otherwise necessary to bid. Such designation shall be made in a writing filed with the Court prior to the commencement of the Auction Sale.

**Bankruptcy Court Jurisdiction:** The Bankruptcy Court shall determine any disputes concerning the Sale of the Property. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under Debtors' pending case.

CONTRACT dated as of the _____ day of _____, 2015, between Robert Litwin (the "Seller" or "Debtor") and _____having an address at_____("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

1        Sale of Premises

1.1.     Seller shall sell or cause to be sold to Purchaser, and Purchaser shall purchase, ~~at the price and upon the terms and conditions set forth in this contract~~ the real property located at 127/129 West 112th Street, New York, New York (the "Premises") at the price and upon the terms and conditions set forth in this contract and the rider annexed hereto and made a part hereof (hereinafter, collectively, the "Contract").

1.2      Purchaser acknowledges that the Sale shall be conducted pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York (hereinafter the "Bankruptcy Court") in Case No.14-12933 and the "Bidding and Auction Procedures" (hereinafter the "Bidding Procedures") which were approved by the Bankruptcy Court on and is annexed to this ~~contract~~Contract.

~~Paragraph 1.03.~~

1.3.     Purchaser acknowledges that this sale is subject to and governed by (1) the Orders of the Bankruptcy Court, (2) the provisions of the United States Bankruptcy Code (hereinafter the "Code"), (3) the laws of the State of New York, to the extent they do not conflict with (1) and (2), above, and (3) the Bidding and Auction Procedures approved pursuant to the motion of AHM Advisors LLC (the "Plan Proponent" or "AHM").

2        Purchase Price, Acceptable Funds

2.1        The purchase price ("Purchase Price") to be paid by Purchaser to Seller

for the Premises is (                                ) Dollars or such other bid by the Purchaser

approved by the Bankruptcy Court, payable as follows:

(A)        on the signing of this ~~contract~~Contract, by bank check payable to the Escrowee

(as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to

be held in escrow pursuant to Bidding Procedures as defined in Article 3 hereof (the "Down

Payment").

(B)        **THIS CONTRACT IS NOT SUBJECT TO ANY MORTGAGE**

**CONTINGENCY.**

(C)        The balance at Closing (as hereinafter defined) in accordance with

Section 2.2 hereof (the "Cash Balance")

2.2        All monies payable under this ~~contract~~Contract, unless otherwise specified

herein, shall be paid by (a) certified checks of Purchaser drawn on any bank, savings bank, trust

company

or savings and loan association having a banking office in the City of New York or (b) official

bank checks drawn by any such banking institution, payable to the order of Seller (as Seller

shall direct) and bearing no endorsements, except that Attorney's Escrow Checks of Purchaser

payable to the order of Escrowee (or as Plan Proponent directs) up to the amount of $1,000.00

shall be acceptable for sums other than the Purchase Price payable to Seller at Closing or (c)

by wire transmission.

3    Escrow of Down Payment

3.1    (a) The Down Payment shall be paid by check or checks drawn to the order of and

delivered to Lewis W. Siegel, Esq. ("Escrowee"). The Escrowee shall hold the Down Payment in

escrow in a non-interest bearing IOLA Account until the Closing or sooner termination of this

Contract and shall pay over or apply the Down Payment in accordance with the terms of this

section. At the Closing, the Down Payment shall be paid by Escrowee in accordance with Bidding

Procedures. If for any reason the Closing does not occur and either party makes a written demand

upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party

of such demand. If Escrowee does not receive a written objection from the other party to the

proposed payment within 10 business days after the giving of such notice, Escrowee is hereby

authorized to make such payment. If Escrowee does receive such written objection within such 10

day period or if for any other reason Escrowee in good faith shall elect not to make such payment,

Escrowee shall continue to hold such amount until otherwise directed by written instructions from

the parties to this Contract or an order of the Bankruptcy Court. However, Escrowee shall have the

right at any time to deposit the escrowed proceeds and interest, if any, thereon, with the clerk of the

Bankruptcy Court or such other party as the Bankruptcy Court may direct. Escrowee shall give

written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be

relieved and discharged of all further obligations and responsibilities hereunder.

(b)    The parties acknowledge that Escrowee is acting solely as a stakeholder

at their request and for their convenience, that Escrowee shall not be deemed to be the agent of

either of the parties, and that Escrowee shall not be liable to either of the parties for any act or

omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract

or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contract or involving gross negligence on the part of the Escrowee.

(c)    Escrowee shall be permitted to act as counsel for AHM in any dispute as to the disbursement of the Down Payment or any other dispute between the parties whether or not Escrowee is in possession of the Down Payment and continues to act as Escrowee.

(d)    Escrowee acknowledges receipt of the Down Payment by bank check subject to collection or wire transmission and Escrowee's agreement to these provisions by signing in the place indicated on the signature page of this contact.

4    The Closing

4.1    The conveyance of title to the Premises by the Seller to Purchaser (the "Closing"), and payment of the Balance by Purchaser to Escrowee or as Plan Proponent directs shall take place no later than 10 business days following the entry of an Order approving the transaction, unless such order is stayed by a Court of competent jurisdiction. Said Closing is to be held at the office of the Escrowee.

5    Acknowledgments of Purchaser

Purchaser acknowledges that:

5.1    Purchaser has inspected the Premises, made all appropriate inquiries into the previous ownership and uses of the Premises, is fully familiar with the physical condition and state of repair thereof, and shall accept the Premises "as is" and in their present condition, including the environmental conditions as reflected in the Terms of Sale annexed hereto,

without any reduction of the Purchase Price for any change in such condition by any reason thereof subsequent to the date of this ~~contract~~Contract. The Terms of Sale set forth conditions which Purchaser agrees to accept, including any covenant, easement, and/or deed restriction, and any other future obligation relating thereto.

5.2    Before entering into this ~~contract~~Contract, Purchaser has made such examination of the Premises, the physical condition and state of repair thereof including the environmental conditions. In entering into this ~~contract~~Contract, Purchaser has not been induced by and has not relied upon any representations, warranties, or statements, whether express or implied, made by Seller or any agent, employee, or other representative of Seller or by any other person representing or purporting to represent Seller or Proponent, which are not expressly set forth in this ~~contract~~Contract, whether or not any such representations, warranties or statements were made in writing or orally.

5.3    If there is any default by the Purchaser in the terms of this agreement, the damages which are due to the Seller, by reason of said default, shall be deemed liquidated in the sum of money deposited upon the signing of this Contract as the Down Payment this day as hereinabove set forth, as Seller's sole remedy, it being agreed that Seller's damages in case of such default might be impossible to ascertain and that the Down Payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

6    Destruction, Damage or Condemnation

6.1    The provisions of Section 5-1311 of the General Obligations Law shall not apply to the sale and purchase provided for in this ~~contract~~Contract.

7        Seller's Closing Obligations

At the closing, Seller shall execute and/or deliver or cause to be executed and/or delivered to Purchaser the following:

7.1        A quit claim deed, in proper statutory form and containing the covenant required by Section 13 of the Lien Law (the "Deed"), duly executed by Debtor, or Proponent on Debtor's behalf, and acknowledged in proper form for recording so as to convey to Purchaser the feeBuyer good and marketable title in fee simple to the Premises, including recordedfree and clear of all liens, claims, encumbrances as required by this Contract, and interests of every type and nature.

7.2        All required real property gains tax forms, questionnaires, and affidavits and New York State transfer tax returns executed by Debtor, or Proponent on Debtor's behalf, to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the Closing.

7.3        The right to possession of the Premises in condition required by this contractContract, subject to the provisions hereinabove and to the provisions of the Code and the laws of the State of New York governing the rights to possession upon the conveyance of the deedDeed subject to any Order of the Bankruptcy Court and the Bidding Procedures. Seller shall not be Between the date of this Contract and the Closing, Seller shall terminate any existing leases, occupancy agreements and tenancies so that at Closing, possession of the Premises shall be delivered to Purchaser vacant of all tenancies or other occupants.  Seller shall not, between the date of this Contract and the Closing, permit the occupancy of, or enter into any new lease, occupancy agreement or license agreement for, space in the Premises which is presently vacant or which may hereafter become vacant.

~~obligated to bring any motion or proceeding for the purpose of obtaining possession of any part of the Premises, or to remove any tenant or occupant therefrom after delivery of the Deed.~~

7.4     Any other documents required by this Contract or by law to be delivered by Seller, or which are reasonably requested by Purchaser's title insurance company, to consummate this transaction, or which may be appropriate or necessary to convey the real property interest intended to be conveyed.

7.5     A certification that Seller is not a "foreign person" as that term is defined in Foreign Investment in Real Property Tax Act, Internal Revenue Code Section 1445, as amended, and the regulations promulgated thereunder.

8     Purchaser's Closing Obligations

At the Closing, Purchaser shall execute and/or deliver:

8.1     To the Escrowee, monies as defined above in payment of the Cash Balance.

8.2     All required real property gains tax forms, questionnaires, and affidavits, and New York State transfer tax returns, and cause all such returns to be issued at the Closing and delivered to the representative of Purchaser's title company for delivery to the appropriate public officers promptly after the closing. Purchaser will pay all applicable transfer taxes and recording fees.

8.3     Any other documents required by this Contract or by law or reasonably required by seller to be executed and/or delivered by Purchaser to consummate this transaction.

9       Apportionments

9.1      The parties specifically acknowledge that there shall be no apportionments made as of the date of closing, whether for taxes, water or sewer charges, emergency repair liens, assessments, rents, fuel, or any other matters relating hereto.

10      Objections to Sale

10.1     This Contract shall automatically terminate if the Court rejects the Sale or if Seller shall be unable to cause title to the Premises to be conveyed to Purchaser at the Closing Date or any adjournments thereof in accordance with the provisions of this Contract and the Bidding Procedures. Purchaser nevertheless may elect either (i) to accept such title as Seller may be able to have conveyed, but without any abatement of or other credit to the Purchase Price or liability on the part of Seller or (ii) to terminate this ~~contract~~Contract. The sole liability of Seller shall be to refund the Down Payment and interest thereon, if any, to the Purchaser and this Contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability. Neither Seller nor Plan Proponent shall be required to bring any action or proceeding or to incur any expense to cure any title defect or to enable Seller otherwise to comply with the provisions of this ~~contract~~Contract, except as may otherwise be provided in this Contract.

10.2     Purchaser shall take title to the subject Premises "as is" and subject to: any state of facts an accurate survey may show; encroachments, covenants, easements, and restrictions of record, if any; violations, fines, penalties, zoning regulations, and ordinances of the Village, Town, County, State, or other district in which said Premises ~~lie~~is situated, provided that none of the foregoing matters renders title unmarketable, and provided further that title to be conveyed by Seller shall be insurable at regular rates by a reputable title insurance company

selected by Purchaser doing business in the State of New York.   Purchaser is aware of and

agrees to the Terms of Sale which are attached to this Contract and required hereunder, as such

Terms of Sale are modified by this Contract.

11      Notices.

11.1    All notices under this Contract shall be in writing and shall be delivered personally,

or by nationally recognized overnight courier, addressed to Plan Proponents Attorney, on behalf of

the Seller, at the address set forth below, and to Purchaser addressed to Purchaser's Attorney at the

address set forth below.


If to Plan Proponents Attorney, to

Lewis W. Siegel
630 Third Avenue - 7th Floor
New York, NY 10017


If to Purchaser's Attorney:


12      Limitations on Survival of Representations, Warranties, Covenants and other

Obligations

12.1     Except as otherwise expressly set forth in this contractContract, no

representations, warranties, covenants or other obligations of Seller or Plan Proponent and/or

Purchaser set forth herein shall survive the Closing except as specifically provided to survive,

and no action based thereon shall be commenced after the Closing except as to such

representations specifically provided to survive.

12.2     The delivery of the ~~deed~~Deed by the Seller and the acceptance thereof by

Purchaser shall be deemed the full performance and discharge of every obligation on the part of

Seller to be performed hereunder, except those obligations, if any, of Seller which are expressly

stated in this Contract to survive.

13     Assignment of Contract

13.1     Purchaser shall not assign this Contract or its rights hereunder without the prior

written consent of Proponent, and any purported assignment without such consent shall be void.

Nevertheless, an assignment of Purchaser's rights under this ~~contract~~Contract, if and when

consented to, shall not be effective unless and until an executed counterpart of the instrument of

assignment and of an assumption agreement by the assignee shall have been delivered to

Proponent and Purchaser and such assignee shall have complied in a timely manner with the

requirements of Art. 31-B of the New York Tax Law applicable to the assignment transaction.

13.2     Seller shall assign pending tax certiorari actions, if any, to Purchaser without

any representations or warranties, and without any further obligation of Seller, except to

execute such documents as may be necessary to effectuate such assignment.

14     Miscellaneous Provisions

14.1     THE PROVISIONS OF THE BIDDING PROCEDURES AND THE ORDERS

OF THE COURT ARE A PART OF THIS CONTRACT. ANY CONFLICT WITH SUCH IN

THIS CONTRACT ~~WILL NOT~~SHALL BE DEEMED TO AMEND ~~OR ALTER~~ SAID

PROCEDURES OR ORDERS.

14.2     Subject to the provisions of Paragraph 14.01, this Contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated hereby, and all prior agreements, understandings, representations and statements, oral or written, are merged into this ~~contract~~Contract. Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge, or termination is sought, and then only to the extent set forth in such instrument.

14.3     This Contract shall be governed by, and construed in accordance with, the Code and the Orders of the Bankruptcy Court and, where it does not conflict with the Code or any Order of the Bankruptcy Court or the Bidding Procedures, the laws of the State of New York.

14.4     The captions in this Contract are inserted for convenience or reference only and in no way define, describe, or limit the scope or intent of this Contract or any of the provisions hereof.

14.5     This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

14.6      This Contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser, together with all amounts required to be paid pursuant to the terms hereto.

14.7     As used in this ~~contract~~Contract, the masculine shall include the feminine and neuter, the singular shall include the plural, and the plural shall include the singular, as the context may require.

14.8     Subject to Paragraph 14.1, if the provisions of any schedule or rider to this Contract are inconsistent with the provisions of this ~~contract~~Contract, the provisions of such schedule or rider shall prevail.  SEE RIDER ANNEXED HERETO AND MADE A PART HEREOF.

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date first above written.


Seller: By: _____     Purchaser: By: _____

Document comparison by Workshare Professional on Saturday, April 04, 2015 9:40:39 AM

| Input: | |
|---|---|
| Document 1 ID | file://\\MAIN01\docs\CLIDOCS\071539\0004\~VER\1\00723058.DOC |
| Description | 00723058 |
| Document 2 ID | file://\\MAIN01\docs\CLIDOCS\071539\0004\00723058.DOC |
| Description | 00723058 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 51 |
| Deletions | 44 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 97 |

## **PURCHASER'S RIDER TO CONTRACT FOR SALE OF PREMISES LOCATED AT 127/129 WEST 112TH STREET, NEW YORK, NY**

The Contract to which this Rider annexed is hereby modified and supplemented as provided herein.   In the event of any conflict between the provisions of this Rider and the provisions of the Contract to which this Rider is annexed, the provisions of this Rider shall govern.

1.      Seller makes the following representations which are true as of the date hereof and shall be true at closing:

   (a)      Seller is the sole owner of the Premises and has good and marketable title to the Premises.

   (b)      Seller has the power and authority to perform Seller's obligations under this Contract.   Seller's execution and delivery of this Contract and the performance of Seller's obligations hereunder have been authorized by all necessary action on the part of Seller.

   (c)      Seller is not a "foreign person" as that term is defined in Foreign Investment in Real Property Tax Act, Internal Revenue Code Section 1445, as amended, and the regulations promulgated thereunder. Seller's United States social security number or taxpayer identification number _____.

   (d)      Other than Seller's bankruptcy case, there exists no material action or proceeding or litigation pending or, to Seller's knowledge, threatened, against the Premises, or against the Seller with respect to the Premises, which, if adversely determined, would affect Seller's ability to perform its obligations hereunder or adversely impact the Premises after the Closing.   Seller has not received any written notice of any such threatened or contemplated action or proceeding or litigation.

   (e)      Reasonable and adequate notice of the sale and transfer of the Premises to Purchaser has been provided to all parties required to be given notice under the Federal Rules of Bankruptcy Procedure and the Local Rules for the Southern District of New York.

{00723112.DOCX;2 }

(f)     There are no employees employed in connection with the operation of the Premises.

(g)     Seller is not a, and is not acting directly or indirectly for or on behalf of any, person, group, entity or nation named by any Executive Order of the United States Treasury Department as a terrorist, "Specifically Designated National and Blocked Persons," or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation that is enforced or administered by the Office of Foreign Assets Control and Seller is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly, on behalf of any such person, group, entity, or nation.

(h)     To Seller's knowledge, there do not exist any unrecorded rights of first refusal, rights of first offer, purchase options or similar options to acquire any part of the Premises or any occupancy rights with respect thereto.

(i)     Seller has no actual knowledge of (i) the presence of any Hazardous Materials (as hereinafter defined) on, in or beneath the Premises, (ii) the existence of any underground storage tanks on the Premises, or (iii) the previous removal of any underground storage tanks from the Premises.   "Hazardous Substances" means those substances included within the definitions of any one or more of the terms " hazardous substances,"   " hazardous materials" , " toxic substances" , and " hazardous waste"   in the Comprehensive Environmental, Response, Compensation and Liability Act, 42 U. S.C. §§ 9601 et seq., as amended, the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. §§ 6901 et seq. and the Hazardous Materials Transportation Act, as amended, 49 U.S.C. §§ 1801 et seq., and in the regulations promulgated pursuant to such laws;   such other substances, materials and wastes as are regulated under applicable local, state or Federal environmental laws or regulations, or which are classified as hazardous or toxic under Federal, state or local environmental laws or regulations; and   any materials, wastes or substances that   are   petroleum;   asbestos;   polychlorinated biphenyls;   lead paint;   urea formaldehyde and urea formaldehyde

insulation; designated as a " hazardous substance" pursuant to Section 311 of the Clean Water Act, as amended, 13 U.S.C. §§ 1321 et I., (33 U. S.C. § 1321) or designated as " toxic pollutants" pursuant to Section 307 of the Clean Water Act (33 U.S.C. § 1317); flammable explosives; or radioactive materials. Hazardous Substances shall not include materials or substances customarily used in the day-to-day operation and maintenance of the Premises, such as cleaning fluids and similar substances and materials, provided they are used in compliance with all applicable laws and in quantities customarily used in similar properties.

2.    In the event that Seller is a "foreign person", as defined in Internal Revenue Code Section 1445 and regulations issued thereunder (collectively, the "Code Withholding Section"), or in the event that Seller fails to deliver a certification of non-foreign status required Section 7.5 of this Contract, or in the event that Purchaser is not entitled under the Code Withholding Section to rely on such certification, Purchaser shall deduct and withhold from the Purchase Price a sum equal to ten percent (10%) thereof and shall at Closing remit the withheld amount with Forms 8288 and 8288A or any successors thereto) to the Internal Revenue Service.

3.    The downpayment shall be deemed made for the account of the Seller by paying same to Seller's attorney to be held in escrow subject to the terms of this Contract.

4.    No party, other than the named Purchaser, shall be liable hereunder as disclosed or undisclosed principal.

5.    Seller waives all rights to institute an action for specific performance of this Contract and in the event of default by the Purchaser, the downpayment shall constitute liquidated damages and the sole obligation of Purchaser in any and all events.

6.    Seller covenants that it will not, prior to the Closing:

(a)    Make any change in the present use of the Premises.

{00723112.DOCX;2 }

–3–

(b)    Generate, store or dispose of Hazardous Materials on or from the Premises nor allow other to do so.

Seller further covenants, pending Closing, that it will:

(a)    Comply with all laws applicable to the Premises.

(b)    Allow Purchaser and its agents reasonable access to the Premises for purposes of ascertaining site conditions and for inspection of the Premises prior to Closing.

7.    Notwithstanding any provision that may be construed to the contrary, in no event shall Purchaser be deemed to assume any obligations or liabilities of Seller for any period prior to the Closing, or for any period subsequent to the Closing, unless such obligation is expressly assumed pursuant to the terms of this Contract.   In addition, and notwithstanding any provision in this Contrary that may be construed to the contrary, in no event shall Purchaser be deemed to release the Debtor from any liability in connection with a claim by a third party relating to environmental matters and Purchaser hereby reserves the right to assert a cross-claim against the Debtor or bring a third-party complaint against the Debtor in the event Purchaser is sued by a third party who does not include the Debtor as a defendant.

8.    Purchaser may assign this Contract provided the assignee executes an assumption agreement agreeing to be bound by all of the terms of this Contract.

Seller:

By:_____
Name:
Title:

Purchaser:

By:_____
Name:
Title:

{00723112.DOCX;2 }

—4—